IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALAN M.,                                                    Case No. 6:24-cv-00784-SB

                Plaintiff,[1]                          **OPINION AND ORDER**

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Alan M. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's

("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title

II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C.

§§ 405(g) and 1383(c), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the

Commissioner's decision.

_____

[1] In the interest of privacy, this opinion uses only the first name and initial of the last
name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is so because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in March 1962, making him fifty-five years old on October 17, 2017, his amended alleged disability onset date.[2] (Tr. 38.) Plaintiff has at least a high school education and past work experience as a quality assurance analyst. (*Id.*) In his DIB application, Plaintiff alleged disability due to psoriatic arthritis, hypertension, osteoarthrosis foot, eczema, cellulitis of finger, acute renal failure, depression, spinal stenosis, post-traumatic stress disorder, and gouty arthritis. (*Id.* at 205.)

The Commissioner denied Plaintiff's DIB application initially and upon reconsideration, and on March 17, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 84, 90, 113.) On August 2, 2023, Plaintiff, along with his attorney and an impartial vocational expert ("VE"), appeared and testified at an administrative hearing held before an ALJ. (*Id.* at 45.) On September 28, 2023, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 39.) On October 5, 2023, Plaintiff's counsel requested the Appeals Council's review of the ALJ's decision. (*Id.* at 177-78.) On March 13, 2024, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

///

---

[2] "[T]o be eligible for DIB, a claimant must prove continuous disability that began on or before the date last insured[.]" *Hasji v. Kijakazi*, No. 21-15319, 2023 WL 6458648, at *1 (9th Cir. Oct. 4, 2023) (first citing 42 U.S.C. § 423(a)(1)(A), (c)(1); then citing 20 C.F.R. § 404.131; and then citing *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1459 (9th Cir. 1995)); *see also Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (noting that "only disabilities existing before [the] date last insured establish entitlement to [DIB]" (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam))). As a result, Plaintiff needed to prove continuous disability that began on before December 31, 2017, his date last insured ("DLI"). (Tr. 28.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 28-39.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 17, 2017. (*Id.* at 28.) At step two, the ALJ found that

Plaintiff suffers from the following severe impairments: (1) degenerative disc disease, (2) osteoarthritis, and (3) psoriatic arthritis. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 31.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c).[3] (*Id.* at 33.) At step four, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a quality assurance analyst. (*Id.* at 38.) Consequently, the ALJ found that Plaintiff was not disabled at any time from October 17, 2017, his alleged onset date, through December 31, 2017, his date last insured. (*Id.* at 39.)

## DISCUSSION

Plaintiff raises two primary issues on appeal. First, Plaintiff argues that the ALJ failed to identify specific, clear, and convincing reasons supported by substantial evidence in the record to reject Plaintiff's symptom testimony. (Pl.'s Br. at 2, ECF No. 15.) Second, Plaintiff argues that the ALJ improperly evaluated the persuasiveness of the medical opinions of Thomas McAndrew, M.D. ("Dr. McAndrew"), and Matthew Cornia, PA-C ("Cornia"). (*Id.*)

For the reasons discussed below, the Court finds that the ALJ's decision is free of legal error and supported by substantial evidence. The Court therefore affirms the Commissioner's decision.

///

///

---

[3] The regulations define "medium work" as lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds; standing or walking for a total of approximately six hours in an eight-hour workday; frequent bending and stooping; and use of hands and arms to grasp, hold, and turn objects. *See* SSR 83-10, 1983 WL 31251 at *6.

I.      **PLAINTIFF'S SYMPTOM TESTIMONY**

A.      **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

B.      **Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 36.) As such, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

1.      **Effective Treatment**

Substantial evidence supports the ALJ's discounting of Plaintiff's testimony on the ground that Plaintiff's symptoms resolved following effective treatment. *See generally Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and

means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019))).

It is well settled that an ALJ may discount a claimant's testimony based on evidence that his symptoms improved with treatment or were well controlled with medication. For example, in *Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's symptom testimony, and in doing so, noted that the ALJ appropriately found that the claimant's testimony was inconsistent with "record evidence that her kidney disease had improved, record evidence that her hypertension was under control, and record evidence that her depression [was] well controlled (when on medication regularly)." *Id.* (simplified); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits").

Similarly, in *Fletcher-Silvas v. Saul*, 791 F. App'x 647, 649 (9th Cir. 2019), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's testimony regarding her limitations. *Id.* The Ninth Circuit noted that the ALJ appropriately found that the claimant's testimony that "her left leg improved only slightly and her right leg did not really improve following her knee replacement surgeries . . . conflicted with [her] self-reports to treatment providers and with the objective indicia of improvement in her medical record." *Id.*; *see also Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023) (holding that the ALJ provided clear and convincing reasons to discount the claimant's symptom testimony, including "treatment efficacy[] and longitudinal improvement"); *Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (holding that substantial

evidence supported that the claimant's "pain improved after treatment and medication"); *Torres v. Saul*, 798 F. App'x 979, 981 (9th Cir. 2019) ("The [ALJ] proffered specific, clear, and convincing reasons for discounting [the claimant's] pain and limitations testimony because the record showed that [her] conditions improved with treatment and were less severe than alleged.").

Consistent with these authorities, the ALJ appropriately discounted Plaintiff's symptom testimony on the ground that his symptoms improved—and even resolved—shortly after surgical treatment. The ALJ noted that Plaintiff began complaining of exacerbated back pain in October 2017. (Tr. 35.) He was thereafter referred for decompression surgery, but his procedure was postponed until January 2018—after his DLI—due to ongoing heavy tobacco use. (*Id.*) The ALJ pointed out that Plaintiff was discharged in good condition two days after his surgery, and by five weeks post-surgery, Plaintiff's leg pain had completely resolved and he was described as "extremely happy." (*Id.*, citing *id.* at 381.) The ALJ further noted that by May 2018, Plaintiff "ha[d] no symptoms whatsoever" and he "had complete relief of his pain and he feels great." (*Id.*, citing *id.* at 379.)

Substantial evidence supports the ALJ's evaluation of Plaintiff's testimony. Of note, the record reflects that Plaintiff sustained "remarkable" improvement after treatment. (*See id.* at 373, 381, 383.) For example, at his four-month follow-up medical appointment in May 2018, Plaintiff had "normal strength, [and] range of motion of hips and knees." (*Id.* at 380.) He was able to ambulate "without any evidence of anomaly whatsoever." (*Id.*) Plaintiff was described by providers as "doing fabulous" and he "couldn't be happier." (*Id.*)

Plaintiff does not challenge the ALJ's conclusions with respect to the success of his back surgery. Plaintiff instead focuses on the ALJ's alleged failure to "adequately consider

[Plaintiff's] ongoing restrictions to avoid reinjury." (Pl.'s Br. at 7.) Plaintiff contends that the restrictions a provider recommended two weeks after his back surgery, including no bending, twisting, or lifting more than ten pounds, were meant to be lifelong restrictions, rather than temporary instructions specific to Plaintiff's period of post-surgery recovery, because there is no evidence that the provider ever lifted those restrictions. (*Id.* at 6-7.) Plaintiff argues that if the ALJ had incorporated those post-surgery restrictions into the RFC, Plaintiff would be considered per se disabled. (*Id.* at 7.) The Court disagrees.

To begin, the only evidence in the record that Plaintiff was under any "lifelong" activity restrictions comes from a single treatment note in January 2022, wherein his provider stated that "[Plaintiff] was cutting firewood and doing heavy work with his back despite the fact that I [gave] him some restrictions that were lifelong to avoid as much reinjury issues as possible." (*Id.* at 373.) But that provider does not elaborate on what lifelong restrictions he recommended,[4] nor does the provider articulate any further or future restrictions for Plaintiff. (*Id.* at 375.)

The record is, at best, ambiguous as to the duration of any restrictions that Plaintiff's providers recommended following his back surgery. At the hearing, Plaintiff testified that the lifelong restrictions were "no more strenuous woodcutting, and no riding in motorboats, and things like that." (*Id.* at 67.) By way of comparison, at his final follow-up appointment in May 2018, four months after his surgery, Plaintiff's provider simply noted that "[d]o's and [d]on'ts were discussed." (*Id.* at 380.) This non-specific entry does not support Plaintiff's argument that his provider intended any post-surgery restrictions to apply for the rest of his life.

---

[4] Plaintiff's counsel acknowledged at the hearing that Plaintiff's medical records do not include any descriptions of a lifelong restriction. During the administrative hearing, Plaintiff's attorney asked for Plaintiff to describe the restrictions because "the doctor says that he had given you lifelong restrictions, and that isn't in any of the charts that we have, what those restrictions are." (Tr. 67.)

It is also notable that there is no evidence in the record that any other medical provider recommended or referenced any lifelong restrictions. Plaintiff continued to see medical providers after his post-surgery follow-up visit in May 2018, and no provider documented any continuing restrictions, despite Plaintiff's ongoing participation in strenuous activities such as hunting, hiking, and wood chopping. For example, Plaintiff visited a provider in November 2018, complaining of foot pain related to increased activity, including hunting and hiking in the woods, and the notes of the visit do not reference any restrictions. (*Id.* at 376.) At a routine appointment in May 2020, Plaintiff was described as "staying active cutting wood for winter" and he had already cut "[two] cords" of wood. (*Id*. at 428.) Notably, Plaintiff did not complain of increased back pain from these activities, nor did his providers communicate any warnings relating to restrictions resulting from his back surgery. (*Id*. at 376-77, 428-30.) In fact, Plaintiff did not complain of renewed back pain, joint pain, or any other associated symptoms until December 14, 2021, nearly four years after his DLI. (*See id*. at 405-09.) For these reasons, the ALJ's conclusion that a provider's post-surgery restrictions were not intended to be lifelong restrictions was reasonable, and the ALJ was not required to include any such restrictions in the RFC determination. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting that an ALJ's RFC determination need only include those limitations found credible and supported by substantial evidence). Accordingly, the Court finds that the ALJ appropriately discounted Plaintiff's symptom testimony on the ground that his symptoms improved after surgery and did not err by failing to include any surgery-related restrictions in Plaintiff's RFC.

### 2.    Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's

testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Nevertheless, an ALJ may discount a claimant's testimony where it is inconsistent with the objective medical evidence. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding the ALJ's rejection of [the claimant]'s testimony, in part, because it conflicted with the objective evidence); 20 C.F.R. § 404.1529(c)(4) (explaining that ALJs "consider whether there are any inconsistencies in the evidence and the extent to which there are conflicts between [a claimant's] statements and the rest of the evidence, including . . . the signs and laboratory findings, and statements by [] medical sources").

The ALJ properly relied on objective medical evidence in discounting Plaintiff's symptom testimony. To begin, as the ALJ noted, Plaintiff testified that he was unable to work during the relevant period due to psoriatic arthritis, but the record reflects no ongoing treatment for psoriatic arthritis during the relevant time period. (Tr. 36, 55.) Although Plaintiff's history with psoriatic arthritis was discussed at medical appointments in the context of his medical history, there is no mention of ongoing treatment or any recommendation for new treatment during the period in question. (*See id*. at 444, 569.) Nor is there any discussion of exacerbated psoriatic arthritis symptoms during the relevant period. Thus, the ALJ did not err in finding Plaintiff's testimony that psoriatic arthritis prevented him from working during the relevant period was inconsistent with the medical evidence of record. *See Carmickle v. Comm'r, Soc. Sec.*

*Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (noting that contradiction with the medical record is a valid reason to reject a claimant's testimony).

Plaintiff argues that the ALJ improperly concluded that his "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence prior to the date last insured." (Pl.'s Br. at 5.) Plaintiff asserts that "the claimant is not limited to medical records existing prior to the date his disability insurance coverage expired to establish that his disability existed on or before that date." (*Id*.) Plaintiff is correct, but the ALJ did not restrict his evaluation or findings to the pre-DLI time period. In reviewing the ALJ's decision, it is clear that the ALJ reviewed the record as a whole, as the regulations require. (*See, e.g.*, Tr. 36-39, addressing Plaintiff's medical records from 2017 through early 2022); *see also* SSR 16-3p, *available at* 2016 WL 1119029 ("Consistent with our regulations, we instruct [ALJs] to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms").

In any event, although the ALJ must consider the entire record, the burden rests with the claimant to provide sufficient evidence that a disabling condition existed *prior* to the DLI. *See, e.g.*, *Artis v. Barnhart*, 97 F. App'x, 740, 741 (9th Cir. 2004) (upholding the ALJ's denial of benefits where Plaintiff did not provide sufficient evidence that a disability existed prior to the DLI); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (upholding the ALJ's denial of benefits where the medical evidence did not establish that a disability existed prior to the claimant's DLI). Plaintiff has failed to point to sufficient evidence to establish disability prior to his DLI. Rather, the record reflects that Plaintiff successfully engaged in a variety of physically demanding pursuits after his back surgery, and sought minimal medical treatment for any of his asserted disabling conditions until January 2022:

- May 7, 2018: At his final post-surgery follow-up appointment, the provider describes Plaintiff as having "no symptoms whatsoever" and "complete relief" from pain. (Tr. 379.)

- November 27, 2018: Plaintiff reports foot pain from increased activity, including hunting and hiking in the woods. Testing reflected that his pain was consistent with osteoarthritis, secondary to a joint fusion operation eight years prior. The provider recommended only conservative treatment, including ice, anti-inflammatories, and supportive inserts, and noted no other restrictions. (*Id*. at 376-77.)

- January 30, 2020: Plaintiff visited Dr. McAndrew for an annual examination. (*Id*. at 520-30.) Dr. McAndrew noted he had not seen Plaintiff in the last year and described Plaintiff's back surgery as having occurred "several years ago without recurrence" and his psoriatic arthritis as "without any signs or symptoms." (*Id*. at 520, 530.) Dr. McAndrew did not reference any restrictions relating to Plaintiff's back, and his objective examination showed Plaintiff had "no myalgias, no joint stiffness, no joint swelling, no back pain and no arthralgias." (*Id*. at 522.)

- February 17, 2020: Plaintiff visited a provider for blood pressure and alcohol use disorder symptoms. Plaintiff had "no myalgias, no joint stiffness, no joint swelling, no back pain and no arthralgias." (*Id*. at 439.)

- March 5, 2020: Plaintiff visited a provider for medication management, anxiety, and blood pressure. (*Id*. at 435.)

- March 8, 2020: Plaintiff called his provider with questions relating to dehydration and low blood pressure symptoms. (*Id*. at 434.)

- April 1, 2020: Plaintiff called for medication management follow-up, and reported feeling better with Lexapro. (*Id*. at 431.)

- May 5, 2020: Plaintiff reported to Dr. McAndrew that he "has been staying active cutting wood for the coming winter" and "[h]e already has put up [two] cords." (*Id*. at 428.) No precautions or reminders of post-surgery restrictions were discussed.

- March 19, 2021: Dr. McAndrew noted he had not seen Plaintiff since May 2020. (*Id*. at 424.) Plaintiff did not report any back pain and Dr. McAndrew noted normal objective findings. (*Id*. at 426.)

- December 14, 2021: Plaintiff visited a provider for lumbar pain and was referred for magnetic resonance imaging. (*Id*. at 405-09.)

- January 25, 2022: Plaintiff reported increased back pain, likely the result of a mechanical source such a joint dysfunction. Her provider prescribed anti-inflammatory medication and requested electromyography and nerve conduction studies. (*Id*. at 373, 375.)

- March 21, 2022: Plaintiff's back pain improved with conservative treatment. He reported it "still hurts but not near as bad as it used to." (*Id*. at 563.) Plaintiff said he was "pretty happy with that." (*Id*.)

As the record demonstrates, the ALJ's conclusion that Plaintiff's symptom testimony was inconsistent with the medical evidence is a reasonable interpretation of the record. Although Plaintiff offers an alternative interpretation, it is ultimately the ALJ's responsibility to resolve any ambiguities in the medical evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th

Cir. 2008) (stating that an ALJ "is the final with respect to resolving ambiguities in the medical evidence.").

### 3.    Conclusion

For all of these reasons, the Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony, and did not commit harmful error.

## II.    MEDICAL OPINION EVIDENCE

Plaintiff argues that the ALJ erred in evaluating the persuasiveness of the medical opinions of Dr. McAndrew and Cornia. (Pl.'s Br. at 8-12.)

### A.    Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017."[5] *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion."[6] *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*,

---

[5] The parties agree the revised regulations apply because Plaintiff filed his application after March 27, 2017. (*See* Pl.'s Br. at 8; Def.'s Br. at 6-7, ECF No. 17.)

[6] In *Cross*, the Ninth Circuit held that the revised regulations are valid under both the Social Security Act and Administrative Procedures Act. 89 F.4th at 1216-17. Recently, "[t]he Supreme Court . . . overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which 'required courts to defer to permissible agency interpretations of the statutes those agencies administer—even when a reviewing court reads the statute differently.'" *Williams v. O'Malley*, No. 23-35358, 2024 WL 3519774, at *1 n.1 (9th Cir. July 24, 2024) (quoting *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2254 (2024)). In *Cross*, the Ninth Circuit "held that the [Social Security] Act 'plainly encompasse[d] the Commissioner's authority to adopt regulations to govern the weighing of medical evidence,' without deferring to the agency's interpretation of the statute." *Id.* (quoting *Cross*, 89 F.4th at 1215). Consequently, the Ninth Circuit has found that the Supreme Court's decision in "*Loper* does not undercut *Cross*." *Id.*

102 F.4th 1102, 1106 (9th Cir. 2024) (citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) and 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.    Analysis

Plaintiff fails to demonstrate that the ALJ committed harmful error in discounting the medical opinions of Dr. McAndrew and Cornia.

#### 1.    Thomas McAndrew, M.D.

##### a.    Dr. McAndrew's Opinion

On February 11, 2022, Dr. McAndrew completed a questionnaire he received from Plaintiff's counsel regarding Plaintiff's treatment history, diagnoses, and work-related functional limitations. (Tr. 556-61.) Dr. McAndrew reported he had treated Plaintiff for greater than ten years for conditions including psoriatic arthropathy, chronic lumbar pain with degenerative joint disease, and "post traumatic stress disorder/generalized anxiety disorder." (*Id*. at 557.) Dr. McAndrew listed Plaintiff's symptoms simply as "back pain, weakness, fatigue." (*Id*. at 558.) In response to a request to "describe the patient's signs (relevant clinical findings, test results, etc.)," Dr. McAndrew replied that "last lumbar MRI in 2017 showing multi level [degenerative joint disorder] [and] neuroforaminal stenosis – underwent lumbar dis[c]ectomy in 2018." (*Id*.)

With respect to functional limitations, Dr. McAndrew opined that Plaintiff would be "unable to sit/stand/walk greater than 60 minutes." (*Id*.) He could walk four city blocks without rest or significant pain, and could sit, stand/walk for only two hours in an eight-hour workday. (*Id*. at 559.) Dr. McAndrew further opined that Plaintiff would require an unscheduled fifteen-minute break every one-to-two hours, could only occasionally lift ten pounds or less, and never lift twenty pounds or more. (*Id.*) Dr. McAndrew indicated Plaintiff had no limitations in doing repetitive handling or fingering manipulations, but then opined Plaintiff was limited to using his hands and arms only ten percent in a given workday. (*Id*. at 560.) Dr. McAndrew stated that Plaintiff would periodically need to elevate his legs in a physical eight-hour period. (*Id*.) Dr. McAndrew concluded that Plaintiff would be absent from work due to his impairments more than four days per month and stated that all of Plaintiff's limitations identified in his opinion had been present since he began treating Plaintiff. (*Id*. at 561.)

### b.    The ALJ's Decision

The ALJ found Dr. McAndrew's opinion not persuasive, in part because none of the limitations that Dr. McAndrew identified in his opinion were supported by the record. (*Id*. at 37.) The ALJ further observed that the limitations identified in Dr. McAndrew's opinion were inconsistent with his own treatment records, which "document relatively normal physical exam findings, particularly leading up to and proceeding the period at issue." (*Id*. at 37, citing *id.* at 379, 381, 383, 441-64.) By way of example, the ALJ cited Plaintiff's complete resolution of his back pain and radicular symptoms following his lumbar surgery. (*Id*., citing *id.* at 379, 381, 383.) The ALJ further noted that Plaintiff did not experience an exacerbation of his low back pain

symptoms until January 2022,[7] following a period in which he performed heavy work and chopped firewood. (*Id*., citing *id.* at 373.) In summary, the ALJ concluded that Dr. McAndrew's "exaggerated limitations are unsupported by the evidence as a whole" and the evidence did not support limiting Plaintiff "beyond the full range of medium work during the period at issue." (*Id*.)

### c.    Disposition

The Court concludes that substantial evidence supports the ALJ's evaluation of Dr. McAndrew's opinion.

In reviewing the record, the Court agrees that Dr. McAndrew's own records do not include the limitations set forth in his opinion. For example, none of Dr. McAndrew's (or any other provider's) notes contain any reference to Plaintiff needing to elevate his legs periodically, nor are there any recommendations from Dr. McAndrew that Plaintiff limit the amount of weight he can lift. (*See, e.g.*, *id.* at 400, 563, 585, 592, 627, 633, 643, 647, 650, 658.) Additionally, as the ALJ noted, Dr. McAndrew's opinion is inconsistent with evidence reflecting that Plaintiff had normal physical examination results and was physically active after his surgery. (*See, e.g.*, *id.* at 379, 383, 387, 441-64.) Therefore, the Court finds that the ALJ's conclusions were reasonable and supported by substantial evidence.

Plaintiff does not challenge the ALJ's supportability and consistency analysis of Dr. McAndrew's opinion, but instead reasserts his argument that the ALJ failed to "adequately consider the lifelong restrictions placed on him to avoid reinjury to his back." (Pl.'s Br. at 10.)

---

[7] The ALJ incorrectly refers to the date of the cited record as January 2021, but it is dated January 2022. (Tr. 373.) The Court assumes the discrepancy to be a harmless scrivener's error, and uses the correct date contained within the record. (*See id.*)

For the reasons discussed above, the record does not support any such lifelong restrictions. Accordingly, the Court finds that the ALJ did not err in evaluating Dr. McAndrew's opinion.

### 2.    Matthew Cornia, PA-C

#### a.    Cornia's Opinions

Plaintiff had an appointment with Cornia in January 2018 for pre- and post-operative evaluations in connection with his back surgery. (Tr. 341-42, 383, 385-86.) Plaintiff was discharged from the hospital on January 10, 2018 following his back surgery. (*Id*. at 342.) Cornia provided hospital discharge aftercare instructions, including that Plaintiff should do "no bending, twisting, lifting more than [ten to twenty] pounds." (*Id*.) On January 19, 2018, Plaintiff returned for his two-week post-surgery follow-up visit, and Cornia again advised that Plaintiff should "continue to follow his back precautions," including "no bending, twisting, [or] lifting more than [ten] pounds." (*Id*. at 383.) Cornia also advised that Plaintiff could walk with the aid of an ambulatory device. (*Id*.)

#### b.    The ALJ's Decision

The ALJ found Cornia's opinions to be unpersuasive. (*Id.* at 37.) The ALJ first noted that the restrictions assessed by Cornia were "placed after Plaintiff's date last insured," and therefore did not apply to the period of disability at issue. (*Id*.) The ALJ further stated that Cornia's opinion proffered restrictions that were "temporary," and placed in the context of post-operative instructions intended for the first few weeks after Plaintiff's lumbar surgery. (*Id*.) The ALJ cited Plaintiff's statements to providers that his symptoms had completely resolved within four months of his surgery, and noted Plaintiff resumed strenuous activities such as hunting and hiking only a few months later. (*Id*., citing *id.* at 376, 379.) Finally, the ALJ noted that the restrictions in Cornia's opinion were inconsistent with Plaintiff's post-surgery functioning. (*Id*.)

///

c.    **Disposition**

The Court concludes that substantial evidence supports the ALJ's evaluation of Cornia's opinion. The ALJ adequately supported his conclusion that Cornia's recommended restrictions were related to a temporary post-surgery period, and the restrictions were inconsistent with the record reflecting that Plaintiff's symptoms were resolved by his four-month post-surgery appointment. Plaintiff relies again on his argument that Cornia's post-surgery precautions were not temporary because the record does not document that Cornia ever lifted the restrictions. (Pl.'s Br. at 11.) However, as discussed, the record before the Court does not support Plaintiff's interpretation of the evidence. For these reasons, the Court finds that the ALJ did not err in discounting Cornia's opinion. *See Vazquez v. Kijakazi*, No. 22-35642, 2023 WL 5453198, at *1 (9th Cir. Aug. 24, 2023) ("[T]he ALJ's alternative interpretation . . . is at least equally rational, and the reasoning is legally sufficient."); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (simplified).

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 27th day of March, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge